### DOLESE BROS. CO. v. McBRIDE et al.
### No. 36039.

Supreme Court of Oklahoma.
March 23, 1954.

Pierce, Mock & Duncan, John R. Couch, Oklahoma City, for petitioner.

Finch & Finch, Sapulpa, Frank Grayson, Schwoerke & Schwoerke, Oklahoma City, Mac Q. Williamson, Atty. Gen., for respondents.

CORN, Justice.

This is a proceeding by Dolese Brothers Company to review an award of the State Industrial Commission awarding compensation to respondent Bill McBride.

On November 23, 1949, respondent filed a claim for compensation in which he states that on October 3, 1949, while in the employ of petitioner he sustained an accidental injury consisting of an injury to his hip and legs resulting in some permanent disability to his person. The injury was caused by falling into a water ditch about three feet deep.

The case was assigned to a trial commissioner who at the conclusion of the evidence awarded compensation for temporary total disability. The award was sustained on appeal to the commission en banc.

Petitioner complied with the order of the commission, paid in full the amount awarded for temporary total disability and furnished respondent with further medical treatment consisting of treatment by two doctors and continued such treatment until respondent was discharged by the doctors.

It then filed a motion before the State Industrial Commission to discontinue payments of temporary compensation. The case was set for hearing before a trial commissioner on March 27, 1953 and at the conclusion of the evidence the commissioner in substance found: Respondent's temporary total disability ended on June 3, 1953;

that as a result of the injury sustained by him from the accident occurring on October 3, 1949, respondent sustained a 60 per cent permanent partial disability to his body as a whole for which he is entitled to compensation for 300 weeks or a total sum of $7,500 and entered an award accordingly. The award was sustained on appeal to the Commission en banc.

Petitioner brings the case here to review this award and relies for its vacation on the sole ground that there is no competent medical evidence to sustain the findings of the Commission that respondent as a result of his injury sustained a 60 per cent permanent partial disability to his body as a whole.

Petitioner however, in its brief concedes that respondent while in its employ sustained an accidental injury as claimed by him; that it arose out of and in the course of his employment and as a result thereof he is to some extent permanently disabled. It is however, argued that the medical evidence does not authorize an award in excess of an award based on 30 percent permanent partial disability to the body as a whole.

In view of this concession we do not think it necessary to discuss the evidence in detail other than the medical evidence.

The record discloses that respondent, after he sustained his injury, at the direction of petitioner, was treated by several physicians, but that he received no benefit from such treatment. He was then directed by petitioner to go to a hospital in Oklahoma City where he was examined and treated by doctors. They operated and removed an injured disc.

One doctor testified, in substance, that he first saw and examined respondent on August 8, 1951. His examination disclosed that respondent was suffering from a ruptured disc at the level of the fifth interspace, left side. On the 12th day of September, 1951, assisted by another doctor, he performed an operation and the disc was removed and the spine was fused. Respondent was kept under observation from that date until September 12, 1952. The operation did not produce the expected results

and on the date above named a second operation was performed. It was then discovered that the nerve root, fourth and fifth roots, were left uncovered which left a defect in the fusion area. The area was re-fused by taking a piece of bone out of the ilium and putting it across the area. This operation resulted in a great improvement of respondent's condition but he has not completely recovered. The doctor further stated that in his opinion respondent, as a result of his injury, has sustained a 30 per cent permanent partial disability to his body as a whole. The other doctor, in all material respects, corroborates the testimony of the first doctor.

It is contended that, if the finding of the Commission as to the extent of the disability is to be sustained, it must be based on testimony of the doctor who in substance testified: He examined respondent on April 6, 1953. He obtained from him the following history: On October 3, 1949, he stepped in a water line ditch and fell backwards over a foundation injuring his back in the lumbar spine. He was thereafter treated by several physicians. An operation was performed on September 12, 1951, and a disc removed, and on September 12, 1952 a second operation was performed. Since that time the patient has been treated by other physicians who had recommended another operation. His examination disclosed that respondent was suffering pain radiating to the left leg and hip, pain at the twelfth dorsal vertebra radiating to the left. There is some dorsal kyphosis and lateral scoliosis of the dorsal spine. The lumbar spine is stiff, there being very little motion in any direction, and there is a midline operative scar from L–2 to the sacrum, and extending to the left and right to the sacro-iliac. Pain is produced on pressure and motion of the spine at D–12 and L–1, radiating to the left and L–2 and L–3 in the midline and slight pain on pressure on the posterior aspect of the left leg. After further detailing the condition which he found to exist the doctor expressed the following opinion:

"* * * Since this patient was last operated in September, 1952, in my opinion, I thought he had not had

enough time to receive maximum benefits from this surgery. From my examination, I do not believe that patient should have another operation at this time; however, I believe him to have 100 per cent permanent total disability for doing manual labor."

The doctor further stated that respondent might possibly receive some benefits from the operation up to a year after it was performed, but that he would not recommend another operation and in answer to the following question propounded by counsel further stated:

"But, now, Doctor, insofar as making an estimate of his permanent disability, even though he might improve some, do you think he would be, when he reached maximum healing, still 100 per cent disabled to perform ordinary manual labor? A. Yes, sir, I think so."

He further testified that he based his conclusion on the fact that respondent had been suffering from an intervertebral disc which had been operated twice without permanent relief of symptoms and that patient actually has a stiffness of his lumbar spine which prevents motion and which limits motion in all directions.

Petitioner contends that the testimony of the doctor as to the extent of disability may only be considered as speculative and conjectural and without probative value, since he has testified that respondent is still temporarily totally disabled and attempts to estimate the disability he might have at some future date. We do not agree. The doctor did not testify that respondent was still temporarily totally disabled nor did he testify that his condition would improve in time and attempt to estimate the disability he might have after such improvement, but on the contrary specifically testified that he is now permanently totally disabled and that regardless of any possible benefits he might receive from the operation he will remain permanently totally disabled and testified to the facts upon which he based such conclusion.

Petitioner cites and relies upon Bergstrom Painting Co. v. Pruett, 205 Okl. 291, 237 P.2d 453, and Sparks v. General Mills, Inc., Okl.Sup., 262 P.2d 155. These cases are distinguishable from the present case on the facts. In neither of these cases did the doctor testify to any present existing permanent disability sustained by the employee, as did the doctor in the present case, but merely expressed an opinion as to what disability he might have at some future time.

These authorities do not therefore sustain the contention of petitioner.

While the medical evidence is conflicting as to the extent of disability sustained by respondent as the result of his injury the evidence is sufficient to sustain the finding of the Commission, it will not therefore be disturbed on review.

We have many times held that the extent of disability sustained by an employee arising out of an accidental injury is a question of fact for the determination of the State Industrial Commission and that its finding on such issue and an award based thereon will not be disturbed on review where reasonably supported by medical evidence.

Award sustained.